IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DARALYN B.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

Case No. 1:21-cv-00519-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Daralyn B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Title II Disability Insurance Benefits and Disabled Widow's Benefits under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for the immediate payment of benefits as of May 20, 2015.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

**PROCEDURAL BACKGROUND**

Born in 1958, plaintiff alleges disability beginning March 1, 2013, due to back pain, memory problems, heart problems, diabetes, and chronic obstructive pulmonary disease. Tr. 209-23, 237. Her applications were denied initially and upon reconsideration. Tr. 112-21, 130-35. On November 27, 2017, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-59. On March 1, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 10-28.

Plaintiff timely filed an appeal, and, on December 16, 2019, District Judge Hernandez reversed the ALJ's decision and remanded the case for further proceedings. In particular, Judge Hernandez found that the ALJ erred in evaluating the medical opinion of examining psychologist Michael O'Connell, Ph.D., who diagnosed plaintiff with somatic symptom disorder. Tr. 971-79.

On December 15, 2020, a second ALJ hearing was held. Tr. 901-29. On January 28, 2021, the ALJ issued a second decision finding plaintiff not disabled. Tr. 876-900.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 882. At step two, the ALJ determined the following impairments were medically determinable and severe: "chronic obstructive pulmonary disease (COPD), atrial fibrillation, degenerative disc disease of the spine, and obesity." *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 887.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff

had the residual function capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> [She] can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; she can frequently balance, and occasionally stoop, kneel, crouch, and crawl; she should avoid concentrated exposure to extreme cold, fumes, odors, dusts, gases, and poorly ventilated areas; she should avoid even moderate exposure to hazardous machinery and unprotected heights.

*Id.*

At step four, the ALJ determined plaintiff was capable of performing her past relevant work as a User Support Analyst and Quality Assurance Analyst. Tr. 893.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) finding her somatic symptom disorder not medically determinable at step two; and (2) rejecting her subjective symptom statements concerning her need to frequently change positions.[2] Alternatively, plaintiff argues that the record warrants further development regarding her somatic symptom disorder.

The Court finds the second issue raised by plaintiff dispositive.[3] When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the

---

[2] Plaintiff does not challenge the ALJ's treatment of her hearing testimony, including concerning her mental limitations, except in regard to her need "to change positions." Pl.'s Opening Br. 10 (doc. 16). The Court therefore conscribes its analysis exclusively to that issue.

[3] As address herein, the Court finds plaintiff disabled as of May 20, 2015. Dr. O'Connell's evaluation did not take place until February 2016 and was not proffered retrospectively. Tr. 492-99. Moreover, as Judge Hernandez indicated, Dr. O'Connell did not provide any concrete functional limitations, such that his opinion does not support a finding of disability even if credited as true (or even necessarily alter the sequential evaluation process if properly considered at step two). Tr. 982; *see also* Tr. 498 (Dr. O'Connell recommending that plaintiff follow up with a medical doctor to obtain "information regarding the degree to which organic findings appear consistent with [plaintiff's] reported level of functional impairment").

Page 3 – OPINION AND ORDER

ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record. SSR 16-3p, *available at* 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

At the hearing, plaintiff testified that she was unable to work due to back pain and limitations associated therewith, explaining: "I am moving all the time. I can't stand for long periods. I can't sit for long periods." Tr. 910, 917. She endorsed the need to change position every 5-to-10 minutes. Tr. 921-22.

After summarizing her hearing testimony, the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 889. As to plaintiff's back impairment, the ALJ resolved that the 2015 "imaging studies do not support a finding of disability" because they showed only mild-to-moderate degenerative changes. Tr. 890. The ALJ also noted plaintiff's range of motion in her back and hips was only mildly limited, plaintiff declined additional physical therapy and rarely

used narcotic pain medication, and that surgery was not recommended. *Id.* Specifically in regard to plaintiff's attested need to alternate positions, the ALJ cited the lack of "objective evidence."[4] Tr. 891.

Initially, the record reflects that plaintiff underwent a course of physical therapy in February and March 2016, and started a second course in September 2016 due to ongoing pain complaints. Tr. 578-80, 598-600, 617-26, 849-53. At that time, plaintiff reported that "PT in the past has worsened pain" but she has continued to do "water therapy in her home pool after being cut off after 4 PT visits." Tr. 598. She did not complete the second course of physical therapy because it made her pain worse, denoting that it takes her "days to recover." Tr. 599, 626-27, 665, 853. Accordingly, the fact that plaintiff did not pursue additional physical therapy or other modalities of conservative treatment does not undermine her subjective symptom testimony.

Moreover, the fact that plaintiff was not a surgical candidate does not somehow render her pain complaints invalid. *See* Tr. 500-01 (orthopedic specialist Glen O'Sullivan, M.D., observing diminished reflexes, mild left-sided weakness, and a restricted range of motion in the neck, shoulders, and back upon exam, as well as objective degenerative changes via imaging, but otherwise no "findings that warrant surgical intervention currently"). And plaintiff's primary care provider continually counseled her on the need to limit her use of narcotic pain medications in

---

[4] To the extent the Commissioner also cites to plaintiff's "improvements through treatment," daily activities, and "termination and subsequent job search," the Court does not find that the ALJ raised these reasons in relation to the challenged testimony. Def.'s Resp. Br. 9-12 (doc. 17). Regardless, plaintiff began consistently reporting back pain back in 2015, and such pain complaints persisted despite plaintiff undergoing regular treatment and, ultimately, significant weight loss. Concerning daily activities, the record does not contravene plaintiff's testimony – i.e., she performed a limited range of activities with frequent breaks, and received regular assistance from her neighbor and boyfriend. And because the Court does not find plaintiff disabled as of the alleged onset date, the fact that she briefly received unemployment benefits and tried to find other work is not a valid basis to discount her testimony concerning her need to alternate positions, especially given the overall tone and content of the record.

Page 5 – OPINION AND ORDER

light of her underlying conditions (which result in fatigue and breathing problems) and other medications. *See, e.g.*, Tr. 562, 570, 666. The fact that plaintiff took this medication as prescribed does not bely her testimony concerning back pain or the need to change positions.

In any event, "whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). As such, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony where, as here, the ALJ's other reasons for finding that testimony unreliable are not supported by substantial evidence. *See Brown v. Colvin*, 2014 WL 6388540, *5-6 (D. Or. Nov. 13, 2014) (reversing the ALJ's credibility finding where the only rationale supported by substantial evidence was inconsistency with the medical record).

Further, courts within this District have been clear that even "mild degenerative disc disease can have disabling effects." *Dahl v. Comm'r*, 2015 WL 5772060, *5 (D. Or. Sept. 30, 2015) (collecting cases). In other words, "mild degenerative changes do not necessarily equate to mild functional limitations." *Ellefson v. Colvin*, 2016 WL 3769359, *6 n.5 (D. Or. July 14, 2016).

Here, plaintiff first mentioned low grade back pain in October 2013. Tr. 354. The record does not contain any references to back pain again until January 2015, at which point plaintiff endorsed longstanding back problems but with pain that was "overall . . . getting worse" and resulted in the need to change position "often." Tr. 344. At that time, plaintiff was without insurance so had limited treatment options. *Id.*

Plaintiff began consistently reporting back pain in May 2015. Tr. 330-32. A May 20, 2015, imaging study revealed "vertebral body anterior height loss with wedge deformity," "disc space

height loss with endplate sclerosis," and "[m]ild hypertrophic degenerative changes" in the lumbar spine. Tr. 761-62. A comparison study from August 3, 2015, demonstrated "a mild disc bulge with moderate degenerative facets causing mild bilateral neural foraminal narrowing," as well as a "mild to moderate anterior wedge compression fracture involving T12 similar to prior." Tr. 763-69. By December 2015, plaintiff remarked "[it] was really getting hard to take the pain" and requested referrals to a specialist and physical therapy. Tr. 408-09. In January 2016, plaintiff reported being "[i]in so much pain [she] can't stand it." Tr. 560. At that time, plaintiff was prescribed narcotic pain medication. Tr. 561. Plaintiff's consultation with Dr. O'Sullivan in February 2016 did not yield any surgical solutions, such that plaintiff commenced her first course of physical therapy. In March 2016, plaintiff followed up on obtaining a referral to a pain clinic. Tr. 569. Thereafter, plaintiff's back complaints continued, as did her reports of needing to frequently alternate position, and her providers repeatedly observed her to be in pain and have a limited range of motion. *See, e.g.*, Tr. 578-79, 654-55, 665, 676, 845, 849-50, 854-55, 1233. As a result, plaintiff's longstanding treating physician, Victoria Cordy, M.D., opined in September 2017 that "it would be difficult for [plaintiff] to have a job including sedentary work." Tr. 676-78.

There is nothing in the record that belies the aforementioned evidence or otherwise suggests that plaintiff's back condition markedly improved. Indeed, plaintiff's more recent records reflect that she is capable of "3 minutes of physical activity prior to onset of . . . lumbar and hip discomfort." Tr. 1564. Given the record before this Court, it was error for the ALJ to disregard plaintiff's back pain symptom testimony based on the lack of corroborating objective evidence. Cf. *Kershner v. Massanari*, 16 Fed.Appx. 606, 608 (9th Cir. 2001) (ALJ committed reversible error when he focused on whether minor degenerative disc disease could produce "the symptoms of extreme pain that the claimant alleges" rather than simply asking whether it could produce the

type of symptoms alleged); *see also* Carradine v. Barnhart, 360 F.3d 751, 753 (7th Cir. 2004) ("[p]ain, fatigue, and other subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition"). Indeed, plaintiff was 55 years old at the time of the alleged onset date and suffered from, amongst other conditions, obesity, and heart problems. It is beyond reasonable dispute that degenerative disc disease, especially when coupled with these other impairments, could result in the need to change positions frequently.

The issue therefore becomes the proper legal remedy. The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id.* at 1100-01 (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error in regard to plaintiff's subjective symptom testimony. Additionally, the record has been fully developed and there are no outstanding issues, such that further proceedings would not be useful.[5] The ALJ has already had

---

[5] Although the Commissioner cites unresolved issues requiring further development, the only factual discrepancy the Commissioner identifies is in regard to plaintiff's subjective symptom testimony. Def.'s Resp. Br. 13 (doc. 17); *but see Atticus W. v. Kijakazi*, 2021 WL 5108743, *6 (D. Or. Nov. 3, 2021) ("[t]he Commissioner's request for reevaluation of medical opinion evidence is the 'heads we win; tails, let's play again' scenario that the Ninth Circuit instructs district courts to avoid") (collecting cases). As addressed herein, however, an independent review of the record does

Page 8 – OPINION AND ORDER

two opportunities to assess the record and failed to do so appropriately. *See Shawn G. v. Kijakazi, 2021 WL 3683878, \*5 (D. Or. Aug. 19, 2021)* (where the ALJ already twice improperly discredited medical evidence, "the Court does not believe that giving the ALJ a third opportunity . . . will serve a useful purpose"). And plaintiff's date last insured has now lapsed over five years ago in regard to her Disability Insurance Benefits, and over seven years ago as to her Disabled Widow's Benefits.

If plaintiff's testimony were credited as true, the ALJ would be required to make a finding of disability on remand. Specifically, the VE testified that plaintiff's past relevant work could not accommodate a sit/stand option. Tr. 926. The VE also stated plaintiff's past relevant work did not translate to any skills that would be transferrable to other sedentary work with a sit/stand option. Tr. 926-27; *see also Smith v. Saul*, 820 Fed.Appx. 582, 586 (9th Cir. 2020) (remanding "for calculation and award of benefits" where the VE "concluded that an individual with [the claimant's] limitations . . . would be unable to perform competitive employment").

Finally, the record, as a whole, does not create serious doubt plaintiff is disabled as of the date of the May 20, 2015, imaging study. Indeed, the Commissioner does not separately address this element. An independent review of the record shows plaintiff has sought regular treatment for her back, is not a surgical candidate, and has tried a number of conservative measures (including physical therapy, over-the-counter medication, narcotics, stretching, etc.), but nonetheless suffers from chronic pain that is accompanied by the need to frequently change positions. Yet, while plaintiff alleges disability as of March 2013, there is nothing in the record establishing the presence of concrete functional limitations prohibiting competitive employment on or around that date. In

---

not divulge any inconsistency between plaintiff's back pain and corresponding need to alternate positions, and the medical record.

fact, plaintiff attempted to find other work after being terminated in early 2013 and did not start consistently reporting back pain until mid-2015, and the sparse medical records existing prior to that date do not suggest an analogous level of impairment.

In sum, plaintiff applied for benefits nearly seven years ago, and there are no outstanding issues given plaintiff's course of treatment with Dr. Cordy, especially when viewed in conjunction with plaintiff's more recent medical records and the VE's testimony. Thus, the Court finds the record sufficiently developed as of May 20, 2015, such that the appropriate remedy is to remand this case for the immediate payment of benefits.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and this case is REMANDED for the immediate payment of benefits as of May 20, 2015.

IT IS SO ORDERED.

DATED this 7th day of July, 2022.

        /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge